UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES R. NEWCOME and
UMAMA J. NEWCOME,

      Plaintiffs,

v.                                         Case No. 8:21-cv-2171-TPB-TGW

HERNANDO COUNTY
SHERIFF'S OFFICE, et al.,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' AMENDED CONSOLIDATED MOTION TO DISMISS**

This matter is before the Court on "Defendants' Consolidated Motions to Dismiss the Plaintiffs' Second Amended Complaint with Memorandum of Law," filed on July 14, 2022. (Doc. 61). Plaintiffs James R. Newcome and Umama J. Newcome filed a response in opposition to the motion on August 4, 2022. (Doc. 62). After reviewing the motion, responses, court file, and the record, the Court finds as follows:

**Background**

Plaintiffs James and Umama Newcome bring suit against numerous deputy sheriffs, in their individual capacities, following a SWAT-team raid on their home. According to the allegations of the second amended complaint, on September 14, 2018, Plaintiffs claim that Mr. Newcome went to assist an elderly, ill neighbor. Plaintiffs allege that Mr. Newcome believed a younger man sitting in a truck outside of Mr. Newcome's home pulled a gun on him, so Mr. Newcome "harmlessly

disarmed" the man of what he believed to be a handgun.  But seconds later, after Mr. Newcome had begun walking toward the elderly neighbor's door, he realized that the "gun" was actually a black cell phone and returned it to the man.  Plaintiffs claim that this man never called 911 or told any law enforcement officer that his cellphone had been stolen, or that he had been robbed, and he did not ask to press charges.  None of these events took place in the presence of any law enforcement officers.

Nonetheless, Plaintiffs allege that later that evening/morning, on September 15, 2018, at around 1:07 a.m., the ten individual Defendants – deputies employed by the Hernando County Sheriff's Office – participated in a home seizure, which included launching 10 teargas shells into Plaintiffs' home, shattering three large windows and setting their curtains on fire.  Plaintiffs claim that the deputy sheriffs had no warrant to arrest them, no probable cause to support arrest, and there were no exigent circumstances to justify a warrantless home seizure.

On February 2, 2022, the Court dismissed Plaintiffs' complaint as a shotgun pleading and for failure to state claims.  (Doc. 46).  On February 22, 2022, Plaintiffs filed an amended complaint, asserting six claims for relief.  Defendants moved to dismiss.  (Doc. 54).  The Court held a hearing to address this matter on May 17, 2022.  (Doc. 58).  On June 8, 2022, the Court dismissed the amended complaint, granting leave to amend.  (Doc. 60).  On June 30, 2022, Plaintiffs filed the operative second amended complaint, asserting federal claims against the individual officers.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). "Although Rule 8(a) does not require 'detailed factual allegations,' it does require 'more than labels and conclusions'; a 'formulaic recitation of the cause of action will not do.'" *Young v. Lexington Ins. Co.*, No. 18-62468, 2018 WL 7572240, at *1 (S.D. Fla. Dec. 6, 2018), *report and recommendation adopted*, No. 18-62468-CIV, 2019 WL 1112274 (S.D. Fla. Jan. 9, 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 555.

When deciding a Rule 12(b)(6) motion, the court's scope of review is limited to the four corners of the complaint. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, a document attached to the pleading as an exhibit or referred to in the complaint may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged. *See Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal […]"). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the

[p]laintiff." *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, No. 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

As Plaintiffs in this case are proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff. *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

### *Counts 1, 2, 3, 7, 8, 9*

<u>Qualified Immunity</u>

Defendants argue that they are entitled to qualified immunity and ask the Court to address this issue first. As a threshold matter, the Court finds that Defendants were acting in the scope of their employment and discretionary authority at the relevant times. As such, Plaintiffs must overcome Defendants' right to claim qualified immunity. *See Cornett v. City of Lakeland*, No. 8:06-cv-2386, 2008 WL 2740328, at *7 (M.D. Fla. July 10, 2008).

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation

omitted). Consequently, it is important to resolve questions of immunity at the "earliest possible stage in litigation." *Id.* at 231. A qualified immunity defense may be raised in a motion to dismiss and resolved prior to discovery. *See, e.g., Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Corbitt v. Vickers,* 929 F.3d 1304, 1311 (11th Cir. 2019); *Barbee v. Naphcare, Inc.*, 216 F. App'x 851, 853 (11th Cir. 2007). Generally, it is appropriate to dismiss a complaint on qualified immunity grounds "when the complaint fails to allege the violation of a clearly established right." *Corbitt*, 929 F.3d at 1311 (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).

As the United States Supreme Court has explained,

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Pearson*, 555 U.S. at 231 (internal quotations and citations omitted). To overcome a qualified immunity defense, a plaintiff must establish (1) the allegations make out a violation of a constitutional right; and (2) if so, the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.* at 232 (citing

*Saucier v. Katz*, 533 U.S. 194 (2001)); *Corbitt*, 929 F.3d at 1311. However, courts may exercise their discretion when deciding which of the two prongs should be addressed first, depending upon the unique circumstances in each particular case. *Pearson*, 555 U.S. at 236; *Corbitt*, 929 F.3d at 1311. In fact, a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *See Reichle v. Howards*, 566 U.S. 658, 665 (2012).

"For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Corbitt*, 929 F.3d at 1311 (quoting *Anderson*, 483 U.S. at 640). After all, officials are not obligated "to be creative or imaginative in drawing analogies from previously decided cases," and a general "awareness of an abstract right . . . does not equate to knowledge that [an official's] conduct infringes the right." *Id.* at 1311-12 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011)). A plaintiff may show that a constitutional right is clearly established by showing: "(1) a 'materially similar case'; (2) pointing to a 'broader clearly established principle' that controls 'the novel facts of the situation;' (3) or demonstrating that the conduct involved in the case 'so obviously violates the constitution that prior case law is unnecessary.'" *Lindbloom v. Manatee Cty.*, No. 8:18-cv-2642-T-02AEP, 2019 WL 2503145, at *10 (M.D. Fla. June 17, 2019) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012)).

Because the Court is considering the qualified immunity issue at this stage of the proceedings, the Court relies on the well-pleaded facts alleged in the second amended complaint. At the time of the encounter, it was clearly established that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002); *see also Payton v. New York*, 445 U.S. 573, 574 (1980) (Fourth Amendment violated when officers entered private residence without warrant and with force to make routine felony arrest). Moreover, § 901.15, *F.S.* outlines the circumstances under which an arrest without a warrant would be permissible under Florida law, and none of those circumstances were present according to the allegations the second amended complaint. Likewise, it was clearly established at the time of this incident that the display of weapons, and the pointing of firearms, involves the immediate threat of deadly force and should only be predicated upon a perceived risk of injury or danger to the officers or others. *See Ealum v. Schirard,* 46 F. App'x 587, 591-92 (10th Cir. 2002); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1192 (10th Cir. 2001); *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992). It was also clearly established at the time of this incident that the use of tactical weapons, such as tear gas cannisters, was unreasonable where police have no real basis to believe they faced the threat of violence and they failed to ascertain whether there were any innocent bystanders in the area they deployed force. *See Z.J. by and through Jones v. Kansas City Board of Police Commiss.*, 931 F.3d 672, 682-84 (8th Cir. 2019) (collecting cases involving unreasonable use of flash-bang

grenades); *Estate of Escobedo v. Bender*, 600 F.3d 770, 782-83 (7th Cir. 2010) (collecting cases involving unreasonable use of tear gas); *Young v. Akal*, 985 F. Supp. 2d 785, 800 (W.D. La. 2013) ("Courts have held an unreasonable use of tear gas can violate an individual's right to be free from the use of excessive force under the Fourth Amendment.").

Defendants argue that to be "clearly established," the analysis must only examine cases from the relevant circuit and United States Supreme Court. However, the Court may also consider "a consensus of cases of persuasive authority," including cases from other jurisdictions. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999). But even aside from a consensus in persuasive authority, for a right to be clearly established, there is no requirement that a case be "directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In fact, an officer may have fair notice that his conduct is unlawful even in the absence of a case addressing the specific violation. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Although a close call, at this stage of the proceedings and under the facts alleged by Plaintiffs, it appears that a reasonable officer would therefore have known that it was unlawful to invade Plaintiffs' home without a warrant under these circumstances using the degree of force employed. As such, at this time and upon this record, the Court concludes that Defendants are not entitled to qualified immunity. The motion is denied as to this ground.

Failure to State a Claim

In these counts, Plaintiffs assert that the SWAT raid conducted by Defendants violated their constitutional rights under the Fourth Amendment. To state a claim under § 1983, a plaintiff must allege "(1) the officers' conduct violated a constitutional right, and (2) the challenged conduct was committed 'under the color of state law.'" *Webster v. Fredricksen*, No. 8:18-cv-2790-T-02AAS, 2019 WL 1765069, at *2 (M.D. Fla. Apr. 22, 2019) (quoting *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016)). "An individual is seized for Fourth Amendment purposes if, 'in view of all the surrounding circumstances, a reasonable person would believe that he was not free to leave.'" *Id.* at *2 (quoting *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991)).

To arrest a person in his or her home under the Fourth Amendment, law enforcement officers need both probable cause and either a warrant or exigent circumstances. *Carlson v. Fewins*, 801 F.3d 668, 674 (6th Cir. 2015). "For exigent circumstances to excuse a warrantless search or seizure, there must be both 'compelling need for official action and no time to secure a warrant.'" *Id.* (quoting *Missouri v. McNeely*, 133 S.Ct. 1552, 1559 (2013)).

Taking Plaintiffs' allegations as true, as the Court must do at this stage of the proceedings, the Court finds that Plaintiffs have sufficiently stated claims. Plaintiffs allege deputies surrounded the residence, that Plaintiffs observed officers with rifles pointed at their home, and that Plaintiffs did not feel free to leave. *See, e.g., Real v. Perry*, 810 F. App'x 776, 779 (11th Cir. 2020) (finding district court

erred by granting motion to dismiss where plaintiff alleged that officer drew weapon and pointed it at plaintiff in violation of the Fourth Amendment). They also allege that officers threw 10 teargas cannisters into their home – shattering their windows and setting their curtains on fire – which constituted a seizure and the use of excessive force. At this stage of the proceedings, Plaintiffs are not required to identify which officer pointed which gun at the residence, or which officers threw teargas cannisters. They also do not need to attach SWAT reports to the complaint.

And although Defendants argue that exigent circumstances justified the actions of the officers here, the Court is required to accept the facts as pled by Plaintiffs, who plausibly allege there were no exigent circumstances. "[I]nconvenience to the officers and some slight delay … are never very convincing reasons … to bypass the constitutional [warrant] requirement." *Carlson*, 801 F.3d at 675 (quoting *Johnson v. United States*, 333 U.S. 10, 15 (1948)). There is nothing in the record at this time to suggest that the law enforcement officers did not have the time to get a warrant from a detached magistrate judge before conducting the SWAT raid, which included throwing teargas cannisters through Plaintiffs' windows to force them out of the home. The fact that Defendants waited several hours before deciding to use the teargas cannisters appears to belie the officers' claim that exigent circumstances existed. *See id.* at 675 (citing *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 998 (6th Cir. 1994)). Ultimately, the question of the

existence of an exigency will be better resolved upon a more developed factual record.[1]  The motion to dismiss is denied as to these grounds.

***Count 4.  Excessive Use of Force (Physical Restraining) Against Deputy Troy Hyler by Mrs. Newcome***

In Count 4, Mrs. Newcome alleges that Deputy Hyler threw her to the ground although she was not resisting or attempting to flee, placed his knee on her back, and forcibly handcuffed her, causing injuries to her wrists, shoulder, and arms.  She also alleges that she was arrested without a warrant or probable cause.

Mrs. Newcome was arrested for resisting arrest without violence.  Under the circumstances alleged, officers would not be justified in using any force, and "a reasonable officer thus would have recognized that the force used was excessive." *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998).  Mrs. Newcome has sufficiently alleged gratuitous use of force by Deputy Hyler during the course of her arrest as required to state an excessive force claim under the Fourth Amendment.  *See, e.g.*, *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)); *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014); *Thornton*, 132 F.3d at 1398-1400.  Moreover, because it is clearly established by case law "that gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force," Deputy Hyler is not entitled to qualified immunity at this time.  *See Hadley*, 526 F.3d at 1330.  The motion to dismiss is denied as to Count 4.

---

[1] However, the Court notes that the factual question of exigent circumstances may be better left to a jury.  *See Carlson*, 801 F.3d at 676 (citing *Jones v. Lewis*, 874 F.2d 1225, 1130-31 (6th Cir. 1989)).

*Count 5. False Arrest/Imprisonment by Mrs. Newcome*

In Count 5, Mrs. Newcome asserts a claim for false arrest and imprisonment against Deputy Martin.[2] Under Florida law, any person who resists, obstructs, or opposes an officer in the execution of a legal duty, without violence, is guilty of a first-degree misdemeanor. § 843.02, *F.S.* Mrs. Newcome alleges that in the arrest affidavit, Deputy Martin falsely claimed that she was instructed to come outside but did not do so, which served as the basis of her arrest. If true, Mrs. Newcome did not commit the crime of resisting without violence, and Deputy Martin therefore did not have probable cause or arguable probable cause to arrest Mrs. Newcome for resisting without violence. Mrs. Newcome has stated a claim.

In addition, under these facts, Deputy Martin would not be entitled to qualified immunity because it was not objectively reasonable to detain or arrest Mrs. Newcome. *See Brown v. City of Huntsville, Alabama*, 608 F.3d 724, 734 (11th Cir. 2010) (explaining that officers need arguable probable cause to arrest, which exists where a reasonable officer "in the same circumstances and possessing the

---

[2] The Court notes that under the law of this Circuit, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)). It appears that Mrs. Newcome primarily argues that the force was excessive based on the illegality of the arrest. However, Mrs. Newcome also appears to argue that even if reasonable suspicion or probable cause for arrest existed, the force used against her was excessive. At this juncture, the Court will view the illegal arrest and excessive force claims as merged. If the facts developed after discovery establish that there was reasonable suspicion or probable cause for the arrest, the claims will be separated so that the issues of excessive force and illegal arrest can be considered separately. *See Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1298-99 (M.D. Ala. 2009).

same knowledge" could have believed probable cause existed to arrest the plaintiff). The motion is denied as to Count 5.

### Count 6. Malicious Prosecution by Mrs. Newcome

In Count 6, Mrs. Newcome alleges a federal malicious prosecution claim against Deputy Martin. To assert a federal malicious prosecution claim, Mrs. Newcome "must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

Under Florida law, "[t]he elements of a malicious prosecution claim are: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." *Zivojinovich v. Ritz Carlton Hotel Co.*, 445 F. Supp. 2d 1337, 1346 (M.D. Fla. 2006) (quoting *Valdez v. GAB Robins North America, Inc.*, 924 So. 2d 862, 866 n.1 (Fla. 3d DCA 2006)).

Deputy Martin generally argues that Mrs. Newcome cannot establish the requisite elements, but Deputy Martin only addresses the third and fourth elements

of malicious prosecution – whether there was a bona fide termination and whether there was an absence of probable cause. Mrs. Newcome was arrested for and charged with resisting an officer without violence.[3] Mrs. Newcome alleges that Deputy Martin fabricated statements in the criminal report affidavit, including that he told Mrs. Newcome that she needed to exit the residence, but she advised she would not go outside. Her alleged resistance to his directives served as the basis for her arrest. Moreover, it does not appear that Mrs. Newcome actually entered into an official pretrial intervention program. Rather, the case was dismissed by the prosecutor without Mrs. Newcome first having to complete any kind of pretrial intervention program. She has stated sufficient facts to establish a malicious prosecution claim, and under these facts, Deputy Martin would not be entitled to qualified immunity. The motion to dismiss is denied as to Count 6.

### *Count 10: False Arrest/Imprisonment by Mr. Newcome*

In Count 10 of the amended complaint, Mr. Newcome attempts to assert a claim for false arrest/imprisonment against Deputy Martin. Mr. Newcome generally alleges that he was confined by Deputy Martin, that he was aware of his confinement, that he did not consent to confinement, and that the confinement was not privileged or lawful because it was based on "fabricated evidence." Mr. Newcome was arrested and spent a night in jail prior to posting bond.

---

[3] Contrary to Plaintiffs' assertion, resisting an officer without violence is a crime in the state of Florida. *See* § 843.02, *F.S.*

In the amended complaint, Mr. Newcome has identified several "false statements" that he claims were included in the arrest affidavit.[4] A court considers whether a misstatement in an arrest affidavit amounts to the violation of the Fourth Amendment by asking "whether there was an intentional or reckless misstatement or omission" and examining "the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed." *See Spinnenweber v. Williams*, 825 F. App'x 730, 733 (11th Cir. 2020). In this case, the allegedly false statements identified by Mr. Newcome are not material and removal of these statements would not negate probable cause for arrest. As such, Mr. Newcome has failed to state a claim for false arrest or imprisonment.

Plaintiffs have been given several opportunities to cure pleading deficiencies, and the Court declines to grant another opportunity as to this claim. The motion to dismiss is granted as to Count 10.

*Count 11: Malicious Prosecution by Mr. Newcome*

In Count 11, Mr. Newcome asserts a federal malicious prosecution claim. Mr. Newcome was arrested for resisting an officer without violence, armed burglary of a conveyance, and misuse of 911. He was then charged with aggravated assault with a deadly weapon, resisting an officer without violence, and misuse of 911. After entering into a pretrial intervention program, these charges were dropped.

---

[4] The Court notes that although Mr. Newcome did not attach a copy of the affidavit to the amended complaint, the Court may take judicial notice of the arrest affidavit in case 18-CF-001992. *See* Fed. R. Evid. 201(b)(2); *Cunningham v. District Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

This count is deficient for several reasons. Mr. Newcome presents his malicious prosecution theory based on the fact that all of the initial charges were dropped and he entered into PTI on different charges. This fact is irrelevant and does not support a malicious prosecution claim.

Mr. Newcome also identifies what he believes to be several false statements in the arrest affidavit. However, even if the statements are false, the statements do not support a federal malicious prosecution claim. In this case, the statements identified by Mr. Newcome are not material and removal of these statements would not negate probable cause. As such, he has not stated a facially sufficient claim.

Mr. Newcome also cannot establish a bona fide termination of the proceedings in his favor. Mr. Newcome does not provide many factual allegations concerning the underlying state court proceedings. However, based upon the Court's review of the state court judicial records, it appears that the charges against Mr. Newcome were dismissed in connection with a pretrial intervention program. As part of such this program, Mr. Newcome signed a contract electing not to contest the crime for which he was charged – aggravated assault. As such, Mr. Newcome cannot establish this element of the claim. *See, e.g., Hoffman v. Grissett*, No. 3:16-cv-1091-J-39MCR, 2017 WL 8751752, at *14 (M.D. Fla. Sept. 28, 2017) (finding that plaintiff had failed to state a malicious prosecution claim because he could not show a bona fide termination of the underlying proceeding in his favor when the charges were sent to PTI); *Ardis v. Danheisser*, No. 3:13cv366/MCR/3EMT, 2014 WL 103232, at *6 (N.D. Fla. Jan. 10, 2014) (taking judicial notice of state court

documents that showed nolle prosequi was filed only after the plaintiff successfully completed pretrial intervention program and concluding that plaintiff failed to show bona fide termination in his favor for purpose of malicious prosecution claim).

Plaintiffs have been given several opportunities to cure pleading deficiencies, and the Court declines to grant another opportunity as to this claim. For these reasons, the motion to dismiss is granted as to Count 11.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1) "Defendants' Consolidated Motions to Dismiss the Plaintiffs' Second Amended Complaint with Memorandum of Law" (Doc. 61) is **GRANTED IN PART** and **DENIED IN PART**.

2) The motion is **GRANTED** to the extent that Counts 10 and 11 are **DISMISSED WITH PREJUDICE**, without leave to amend.

3) The motion is otherwise **DENIED**.

4) Defendants are directed to file an answer on or before January 6, 2023.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 13th day of December, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**