UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES R. NEWCOME and
UMAMA J. NEWCOME,

      Plaintiffs,

v.                                          Case No. 8:21-cv-2171-TPB-TGW

HERNANDO COUNTY
SHERIFF'S OFFICE, et al.,

      Defendants.
_____/

**ORDER DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

      This matter is before the Court on the following motions:

      "Plaintiff's Motion for Summary Judgment Umaima Newcome" (Doc. 90)

      "Plaintiff's Motion for Summary Judgment James Newcome" (Doc. 91)

      "Defendant Deputy Sheriff David Martin's Motion for Summary Judgment" (Doc. 92)

      "Defendant Deputy Sheriff Troy Hyler's Motion for Summary Judgment" (Doc. 93)

      "Motion for Summary Judgment on Behalf of Defendants, Deputy Sheriffs Dustin Adkins, Jason Tippin, Brian Schneider and Eric Burburan" (Doc. 94); and

      "Motion for Summary Judgment on Behalf of Defendants, Deputy Sheriffs Willard Brian Stephens, Seth Pardue, Derik Deso, and Francis Ritchie" (Doc. 95).[1]

---

[1] Plaintiffs filed the arrest reports and various SWAT reports, along with CD's containing audio and photographs. (Docs. 90-1; 90-2; 91-1; 91-2; 109). Defendants filed numerous affidavits and depositions. (Docs. 96; 97; 98; 99; 100; 101; 102; 103; 104; 105; 106; 107; 108).

The parties filed responses in opposition (Docs. 111; 112; 113; 114; 115; 116; 117; 118; 119; 120; 121; 122; 123; 124; 125) and replies (Docs. 127; 128; 129; 130; 131; 132).  The Court held a hearing to address this matter on May 14, 2023.  (Doc. 139). After reviewing the motion, responses, replies, court file, and the record, the Court finds as follows:

## Background

Plaintiffs James and Umama Newcome bring suit against numerous law enforcement officers, in their individual capacities, following a SWAT-team raid on their home conducted by deputies from the Hernando County Sheriff's Office.

On September 14, 2018, Joseph Justen, a delivery driver for a local pharmacy, was making a delivery to Plaintiffs' neighbor.  Mr. Justen's brother, Joshua Swisher, accompanied him on this delivery.  While Mr. Swisher waited for Mr. Justen to return, Mr. Newcome put a black handgun with a silver port in his pocket and approached the vehicle, which Mr. Newcome believed to be suspicious. Mr. Newcome asked Mr. Swisher to explain what he was doing and to identify himself.  According to Mr. Swisher, Mr. Newcome pulled the handgun out of his right pocket, showed it to Mr. Swisher, and held it at his side pointing it towards the ground.  Mr. Newcome told Mr. Swisher that he had a concealed weapons permit.  When Mr. Swisher did not respond, Mr. Newcome again told Mr. Swisher about his concealed weapons permit and explained he was there to protect his neighbors.  Mr. Newcome again asked Mr. Swisher to explain what he was doing and to identify himself.

Next, without saying a word, Mr. Newcome reached in through the window of the vehicle and grabbed Mr. Swisher's Samsung Galaxy S8 cell phone (valued at over $800) that was on Mr. Swisher's lap.  Mr. Newcome contends that he believed the cell phone was a gun, and that he needed to disarm Mr. Swisher to protect his neighbor.  After taking Mr. Swisher's cell phone, Mr. Newcome put his own handgun back in his pocket.  He then walked to the front door and handed his neighbor the cell phone he had just taken from Mr. Swisher and asked the neighbor to give the cell phone to Mr. Justen.  Mr. Newcome walked back to Mr. Swisher, who was still in the vehicle, and apologized, and again told him that he had a concealed weapons permit before returning to his home.  The neighbor gave the phone to Mr. Justen, and then both he and Mr. Justen went to speak with Mr. Swisher to find out what had happened.  After Mr. Swisher explained his version of what had transpired, the neighbor called 911.

Subsequently, Deputy Martin and Deputy Bruce Nichols of the Hernando County Sheriff's Office responded to the scene to investigate whether Mr. Newcome had committed a crime.  Based on its investigation, law enforcement would eventually develop probable cause, or at least arguable probable cause, to believe that Mr. Newcome committed an armed robbery of a conveyance.

According to the law enforcement officers, Mr. Newcome was not cooperative, telling them that they were not allowed on his property and refusing to speak with them.  Plaintiffs themselves then began calling 911 with various complaints about the law enforcement presence, among other things.  Over the course of the night,

Mr. Newcome called 911 at least 10 times, and both Plaintiffs spoke with law enforcement at various times, yet Plaintiffs refused to come out of their residence and speak with officers that evening.

At some point during an ever deteriorating situation the Crisis Response Team and the SWAT Team responded to the scene and took over responsibility. They handled further negotiation attempts to get Plaintiffs to come out of the residence. At around 1:07 a.m., the ten individual Defendants – deputies employed by the Hernando County Sheriff's Office – participated in various ways in a home seizure, which included launching 10 shells containing nonlethal chemical agents into Plaintiffs' home, shattering three windows. The deputies did not have an arrest warrant, but they claim that they had probable cause and exigent circumstances to justify a warrantless home seizure.

Mr. Newcome came out of the residence first, showing his hands, walking forward, and then lying on the ground. He was handcuffed by a deputy outside the house. Mrs. Newcome then came out of the residence with hands raised, holding a cordless phone in her right hand. She did not comply with orders to lie on the ground, and she was taken down by a deputy and handcuffed outside the house.

Deputy Martin charged Mr. Newcome with armed burglary of a conveyance, resisting an officer without violence, and misuse of 911 calls. He charged Mrs. Newcome with resisting an officer without violence for failing to comply with law enforcement orders to exit the residence. After Plaintiffs were arrested, a search

warrant was issued for their home – in fact, two separate search warrants were applied for, issued, and executed.

Criminal proceedings were initiated against both Mr. and Mrs. Newcome. In a letter dated January 8, 2019, Mrs. Newcome's criminal defense attorney advised her that the state attorney offered to drop or abandon the charge against her if she completed 30 hours of community service. Mrs. Newcome followed this advice and completed the community service hours, and the charge was dropped. Mr. Newcome entered into and completed a pretrial intervention ("PTI") program.

Plaintiffs subsequently filed suit in this court, alleging various violations of their rights. (Doc. 1). Plaintiffs have sued the officers in their individual capacities. Due to their *pro se* status, the Court granted numerous opportunities for Plaintiffs to amend their complaint to correct deficiencies. (Docs. 46; 50; 59; 60). The operative complaint is the second amended complaint filed on June 30, 2022, although the Court dismissed two of those claims with prejudice and without leave to amend. (Docs. 60; 65). As such, the pending claims are: Home Seizure by Authority Against All Officers by Mrs. Newcome (Count 1); Home Seizure by Force Against All Officers by Mrs. Newcome (Count 2); Excessive Use of Force (Teargassing) Against All Officers by Mrs. Newcome (Count 3); Excessive Use of Force (Physical Restraining) Against Deputy Tory Hyler by Mrs. Newcome (Count 4); False Arrest/Imprisonment Against Deputy David Martin by Mrs. Newcome (Count 5); Malicious Prosecution Against Deputy David Martin by Mrs. Newcome (Count 6); Home Seizure by Authority Against All Officers by Mr. Newcome (Count

7); Home Seizure by Force Against All Officers by Mr. Newcome (Count 8); and Excessive Use of Force (Teargassing) Against All Officers by Mr. Newcome (Count 9). It should be noted that the Court has held at least two different hearings, in person, and emphasized to Plaintiffs that cases of this nature are difficult even for trained lawyers. Although the Court strongly urged them to retain counsel, Plaintiffs have elected to proceed *pro se*.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

As Plaintiffs in this case are proceeding *pro se*, the Court more liberally construes the pleadings. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018). However, a *pro se* plaintiff must still conform to procedural rules, and the Court does not have "license to act as *de facto* counsel" on behalf of a *pro se* plaintiff.[2] *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019).

## Analysis

### *Plaintiffs' Motions for Summary Judgment*

At the outset, the Court notes that Plaintiffs elected not to conduct discovery, apparently because they did not wish to incur the cost of depositions, among other things. Although this was not a major issue when the claims were last addressed by the Court at the motion to dismiss stage of the proceedings, Plaintiffs' decision to

---

[2] As noted, the Court advised Plaintiffs to retain counsel on numerous occasions, including during two in-person hearings.

forgo discovery now makes it nearly impossible for them to establish any of their claims or to rebut Defendants' summary judgment arguments, which the defense has supported with depositions, affidavits, and pinpoint citations.

Plaintiffs have submitted a few audio recordings and photographs, but really nothing else. Plaintiffs primarily argue they are entitled to summary judgment simply because Defendants denied all or most allegations of the operative complaint, which Plaintiffs argue render all of Defendant's assertions wholly incredible. This type of summary judgment argument is nonsensical, bordering on frivolous, even for a plaintiff proceeding *pro se*. Plaintiffs' motions for summary judgment are denied.

***Defendants' Motions for Summary Judgment***

Counts 1, 2, 3, 7, 8, and 9

In this case, Plaintiffs assert numerous § 1983 claims against the individual deputies based on the home seizure. In their respective motions, Defendants argue that the undisputed facts show that Plaintiffs cannot establish their claims, and that Defendants are entitled to qualified immunity.

The affidavits submitted by Defendants establish that Deputies Martin, Hyler, Adkins, Tippin, Schneider, and Burburan did not participate in the deployment of chemical agents. Plaintiffs have submitted no competing evidence. The undisputed evidence therefore shows these Defendants did not personally participate in the deployment of chemical agents, and the Court sees no basis to hold them liable for the § 1983 claims based on the use of chemical agents in Counts

2, 3, 8, and 9.  Plaintiffs also cannot identify which officers, *if any*, pointed firearms at Plaintiffs.  As such, the Court cannot find any basis to hold any deputy liable for the § 1983 claims in Counts 1 and 7.

Affidavits provided by the defense show that Deputies Deso, Pardue, Ritchie, and Stephens were not responsible for the decision to use force but only deployed chemical agents after receiving an order to do so.  Although this evidence was presented by the defense itself (and not Plaintiffs), the Court will consider whether the excessive force claims in Counts 2, 3, 8, and 9 can proceed against Deputies Deso, Pardue, Ritchie, and Stephens because their personal involvement is known.  The Court notes that this analysis would also be applicable if Plaintiffs could somehow assert substantive claims against Deputies Martin, Hyler, Adkins, Tippin, Schneider, and Burburan based on personal participation in any of the events.[3]

"Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dept.*, 575 F. App'x 869, 872 (11th Cir. 2014); 42 U.S.C. § 1983.  In § 1983 cases, when a defendant raises the issue of qualified immunity and demonstrates that he was acting within the scope of his discretionary authority, the plaintiff bears the burden of overcoming that defense. *See, e.g.*, *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  A government official is completely protected from suit if his conduct "does not violate clearly established statutory or constitutional rights of

---

[3] The Court reiterates that Plaintiffs have not put forth any evidence – either affirmatively or in opposition to Defendants' summary judgment motions – to support their § 1983 claims against Deputies Martin, Hyler, Adkins, Tippin, Schneider, and Burburan as to Counts 1, 2, 3, 7, 8, and 9.

which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Importantly, "[t]he determination of whether a police officer's actions were constitutional must be undertaken from the perspective of a reasonable officer on the scene under the same conditions, rather than with the 20/20 vision of hindsight, as the former allows for proper appreciation of the fact that police officers are often forced to make decisions about the amount of force that is necessary in situations that are tense, uncertain, and rapidly evolving." *Smith v. LePage*, No. 1:12-CV-0740-AT, 2015 WL 13260394, at *1 (N.D. Ga. Mar. 31, 2015). A police officer will be entitled to qualified immunity if an objectively reasonable officer in the same circumstances could have believed that the police conduct was not excessive. *Vinyard*, 311 F.3d at 1346 (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).

When analyzing whether a defendant is entitled to qualified immunity, the court considers two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated the plaintiff's constitutional rights, and (2) whether the plaintiff's rights were clearly established. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011); *Hadley v. Gutirrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). Given the undisputed facts, the Court finds that Deputies Deso, Pardue, Ritchie, and Stephens are entitled to qualified immunity.

Defendants were acting within their discretionary authority as law enforcement officers at the time of the alleged wrongful acts. As such, the burden shifts to Plaintiffs to show that qualified immunity is not appropriate. Plaintiffs have failed to present any evidence to that effect – no depositions, no affidavits, and no pinpoint citations to record evidence.

Moreover, even though not required to do so, Defendants have presented evidence to demonstrate that they did not violate Plaintiffs' constitutional rights. Considering the officers' actions, viewed from the perspective of a reasonable officer on the scene under the same conditions, and understanding that police officers are often forced to make decisions about the amount of force that is necessary in situations that are tense, uncertain, and rapidly evolving, the Court finds that Deputies Deso's, Pardue's, Ritchie's, and Stephens's conduct in deploying nonlethal chemical agents into the residence did not violate Plaintiffs' constitutional rights.

Specifically, the Court finds that the undisputed facts establish that a reasonable officer would believe there was either probable cause or arguable probable cause to arrest both Mr. Newcome (for brandishing a weapon, among other things) and Mrs. Newcome (for resisting an officer without violence).[4] In addition, the undisputed facts establish that a reasonable officer would believe that there were exigent circumstances to justify the warrantless arrests and use of force

---

[4] The Court notes that in cases involving warrantless seizures, law enforcement officers are entitled to qualified immunity if they had even *arguable* probable cause. *See, e.g., Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013)(emphasis added). Arguable probable cause exists "if reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed." *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995).

against Plaintiffs because there was probable cause or arguable probable cause to believe Mr. Newcome committed a violent crime – armed robbery of a conveyance – and that he was presently armed and refusing to cooperate with law enforcement officers attempting to negotiate his surrender. A reasonable officer would also find it likely "that delay could cause the escape of [Mr. Newcome] or the destruction of essential evidence, or jeopardize the safety of officers or the public." *See United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987).

Although with the "20/20 vision of hindsight[,]" the better practice would certainly have been to obtain a warrant for Mr. Newcome's arrest from a neutral and detached magistrate, the Court cannot conclude on this record that Defendants acted unconstitutionally.[5] As such, the officers are entitled to qualified immunity as to the § 1983 claims in these counts.

Counts 4 and 5

Mrs. Newcome was arrested for resisting an officer without violence, in violation of § 843.02, *F.S.* In Count 4, Mrs. Newcome asserts a § 1983 claim for excessive use of force based on the force used by Deputy Hyler during her arrest. She alleges that during the course of her arrest, Deputy Hyler threw her to the ground, placed his knee on her back, and forcibly handcuffed her, causing injuries to her wrists, shoulder, and arms. In Count 5, Mrs. Newcome asserts a false arrest and/or false imprisonment claim against Deputy Martin. Deputy Martin and Deputy Hyler seek summary judgment on the respective claims against them,

---

[5] The Court notes that even with a warrant, it is likely that the same events would have transpired since Plaintiffs did not wish to exit the residence.

arguing that they had either probable cause or arguable probable cause to arrest Mrs. Newcome.

"When the facts of a case 'are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate.'" *Benoit,* 343 F. Supp. 3d at 1230 (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)). "For probable cause to exist, […] an arrest must be objectively reasonable based on the totality of the circumstances. This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (quotations and citation omitted). When determining whether an officer had probable cause, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S.Ct. 577, 586 (2018) (quotations and citation omitted). Importantly, "[b]ecause probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Id*. (internal quotations omitted). "Probable cause 'is not a high bar.'" *Id*. (quoting *Kaley v. United States*, 571 U.S. 320, 338)).

Arguable probable cause presents an even lower bar. "To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable'

probable cause." *Bezzaz v. Moore*, No. 6:21-cv-528-JA-DAB, 2022 WL 4890709, at *5 (M.D. Fla. Sept. 16, 2022) (citing *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).  Arguable probable cause exists when a reasonable officer, under the same circumstances and with the same knowledge as the defendant, could believe that probable cause existed.  *Id*.

Because Defendants were acting within the scope of their discretionary authority at the time, Mrs. Newcome bears the burden of showing that Deputy Martin and Deputy Hyler are not entitled to qualified immunity.  However, Mrs. Newcome did not submit any evidence to that effect.  To defeat summary judgment here, Mrs. Newcome "must point to 'specific facts' such that a reasonable jury could return a verdict in her favor," and her "general objection that an opposing party's evidence is incredible […] is insufficient to overcome summary judgment."  *See Benoit*, 343 F. Supp. 3d at 1235.

Mrs. Newcome has only put forth a few photographs and clips of audio recordings with no explanation or context.  For example, with the photographs, it is not clear which of her photographed injuries were sustained during the deployment of nonlethal gas, and which injuries were sustained when she was handcuffed by Deputy Hyler.  The photographs themselves do not appear to portray significant injuries.[6]  As noted, Mrs. Newcome has presented no other affirmative evidence, such as deposition testimony or an affidavit, to create a genuine issue of fact as to

---

[6] The Eleventh Circuit "has established the principle that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."  *See, e.g.*, *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

whether officers had arguable probable cause or probable cause to arrest her, or to establish that the amount of force used against her was excessive and not *de minimis*. Mrs. Newcome has not provided any citation to record evidence to support her own claims or to oppose qualified immunity.

Even when viewed in light most favorable to Mrs. Newcome, the historical undisputed facts of this case, including the exigent circumstances at play, establish probable cause, or arguable probable cause, to believe that Mrs. Newcome committed the offense of resisting without violence by either refusing to exit the residence when ordered to do so by law enforcement, or by not getting on the ground when she eventually did exit the residence.[7] By failing to comply with these commands, Mrs. Newcome at least arguably "resist[ed], obstruct[ed], or oppose[d]" law enforcement officers within the meaning of § 843.02, *F.S.*[8]

Because there was arguable probable cause to arrest Mrs. Newcome, Deputy Hyler had the right to use *de minimis* force against Mrs. Newcome to effectuate the arrest. *See, e.g.*, *Taylor v. Taylor*, 649 F. App'x 737, 746-47 (11th Cir. 2016) (force not excessive where deputy grabbed plaintiff, slammed her into side of patrol

---

[7] Even though Mrs. Newcome did not participate in the crimes for which her husband was being investigated, the circumstances arguably justified the officers' directions for her to exit the residence, for both officer safety reasons and for her own personal safety reasons. The Court reiterates that Mr. Newcome had been accused of a violent crime – robbery with a firearm – and that he was believed to be presently armed. The resulting standoff and SWAT-style raid was a dangerous situation for both the officers and for Plaintiffs.

[8] Although Mrs. Newcome argues that she believed the officers were only directing Mr. Newcome to exit the residence and they did not issue any direct commands to her, she acknowledges receiving and understanding at least one general command to exit the residence. As such, the undisputed evidence demonstrates that she was aware law enforcement officers were directing her to exit the house, and she refused to do so. Mrs. Newcome has also failed to present any evidence to show that she did not hear the commands to get on the ground when exiting the residence.

vehicle, and handcuffed her, fracturing her hand and forearm); *Woodruff v. City of Trussville*, 434 F. App'x 852, 855 (11th Cir. 2011) (officers entitled to qualified immunity where they threw plaintiff to pavement, causing him to strike his head); *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (officer entitled to qualified immunity where he grabbed plaintiff from behind, threw him against van, kneed him in back, and pushed head into side of van). Considering the non-exclusive factors set forth in *Graham*, and considering the record evidence in light most favorable to Mrs. Newcome, the force used was reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

Consequently, because a reasonable officer would have believed that he had a valid basis to arrest Mrs. Newcome, and because Deputy Hyler used only *de minimis* force to effectuate that arrest, Deputy Martin and Deputy Hyler are entitled to qualified immunity as to Mrs. Newcome's claims in Counts 4 and 5.

<u>Count 6</u>

In Count 6, Mrs. Newcome alleges a federal malicious prosecution claim against Deputy Martin. To assert a federal malicious prosecution claim, Mrs. Newcome "must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

Under Florida law, "[t]he elements of a malicious prosecution claim are: (1) an original criminal or civil judicial proceeding against the present plaintiff was

commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." *Zivojinovich v. Ritz Carlton Hotel Co.*, 445 F. Supp. 2d 1337, 1346 (M.D. Fla. 2006) (quoting *Valdez v. GAB Robins North America, Inc.*, 924 So. 2d 862, 866 n.1 (Fla. 3d DCA 2006)).

The State of Florida offered to drop the prosecution of Mrs. Newcome if she completed 30 hours of community service and provided proof of completion to the state attorney's office. Following the advice of counsel, and with her husband's encouragement, she completed the hours. The State Attorney's Office filed an announcement of no information that included the grounds for abandoning the prosecution – that Mrs. Newcome had completed the community service hours as requested. This does not and cannot constitute a bona fide termination of the proceedings in Mrs. Newcome's favor. *See, e.g.*, *Rivas v. Figueroa*, No. 11-23195-Civ-SCOLA, 2012 WL 1343949, at *3 (S.D. Fla. Apr. 18, 2012); *Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1356 (Fla. 1994); *Cohen v. Corwin*, 980 So. 2d 1153, 1156 (Fla. 4th DCA 2008). As such, the Court finds that Deputy Martin is entitled to summary judgment in his favor as to Count 6.

## Conclusion

The facts presented here are disturbing. With the 20/20 vision of hindsight, it is not difficult to see how things could have been handled better by everyone involved. It is also not difficult to envision a scenario where the facts, as alleged by the Plaintiffs and if presented properly, could theoretically constitute valid claims that could only be resolved by a trial.

Plaintiffs are proceeding *pro se* and the Court has been mindful of its duty to proceed liberally when evaluating their claims as required by *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2018), and other binding Eleventh Circuit decisions. But, for the reasons explained above, it is impossible for the Court to allow this case to proceed past summary judgment without taking on the role of *de facto* counsel on behalf of these *pro se* plaintiffs in violation of *United States v. Padgett*, 917 F.3d 1312, 1317 (11th Cir. 2019) and other binding Eleventh Circuit decisions.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1) Defendants' motions for summary judgment (Docs. 92; 93; 94; 95) are **GRANTED**.
2) Plaintiffs' motions for summary judgment (Docs. 90; 91) are **DENIED**.
3) The Clerk is **DIRECTED** to enter final judgment in favor of Defendants Deputies David Martin, Troy Hyler, Dustin Adkins, Jason Tippin, Brian Schneider and Eric Burburan, Willard Brian Stephens, Seth Pardue, Derik

Deso, and Francis Ritchie, and against Plaintiffs James and Umama Newcome.

4) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>4th</u> day of August, 2023.

                  **TOM BARBER**
                  **UNITED STATES DISTRICT JUDGE**